T.C. Memo. 2016-3

UNITED STATES TAX COURT

WAYNE REBUCK, Petitioner <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 844-14L.                    Filed January 5, 2016.

<u>Giovanni V. Alberotanza</u> and <u>Margaret L. Kessler</u>, for petitioner.

<u>Michael A. Raiken</u> and <u>Nancy M. Gilmore</u>, for respondent.

MEMORANDUM OPINION

RUWE, <u>Judge</u>:  Pursuant to section 6330(d)(1),[1] petitioner seeks review of

respondent's determination to proceed with collection by levy of his unpaid

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for all relevant years, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[*2] Federal income tax liabilities for the taxable years 1998, 1999, 2000, 2001, and 2002. Petitioner does not contest the existence or amounts of his underlying tax liabilities, and the only issue for decision is whether respondent abused his discretion by sustaining the proposed levy action.

Background

The parties submitted this case fully stipulated pursuant to Rule 122. The stipulation of facts and the attached exhibits are incorporated herein by this reference.

Petitioner resided in Pennsylvania at the time he filed his petition.

Criminal Judgment and Restitution

On or about November 28, 2006, a grand jury in the Eastern District of Pennsylvania filed an indictment against petitioner along with 10 codefendants on one count of conspiring to defraud the United States pursuant to 18 U.S.C. sec. 371. The grand jury charged that petitioner and 10 codefendants were involved in an organization that conducted sales seminars throughout the United States and solicited clients for fraudulent offshore and domestic trust packages by falsely representing that taxpayers could lawfully avoid paying Federal income tax by placing income and assets into the organization's trust packages. Count 1 of the indictment encompasses activity occurring from "at least January 2000 through at

[*3] least July 2003". On July 15, 2008, the U.S. District Court for the Eastern District of Pennsylvania (District Court) entered a criminal judgment against petitioner. Petitioner was found guilty on count 1 of the indictment and was ordered to pay restitution to the Internal Revenue Service (IRS) of $16,339,199 as a joint and several liability with 10 codefendants.

Civil Penalties and 1996 Tax Liability

On October 5, 2009, respondent assessed civil penalties against petitioner for promoting an abusive tax shelter pursuant to section 6700, as follows:

| Year | Penalty sec. 6700 |
|------|-------------------|
| 1999 | $30,000 |
| 2000 | 27,000 |
| 2001 | 12,000 |
| 2002 | 49,000 |
| 2003 | 9,000 |

On or about February 19, 2010, petitioner requested a collection due process (CDP) hearing concerning the assessment of the above-listed civil penalties (2010 CDP hearing).

On or about November 15, 2010, petitioner filed a Form 1040, U.S. Individual Income Tax Return, for his 1996 tax year, and on January 10, 2011, respondent assessed an income tax liability of $13,809 plus penalties and interest.

[*4] On April 25, 2011, respondent issued a notice of intent to levy to petitioner indicating that respondent intended to collect petitioner's unpaid 1996 income tax liability. On May 6, 2011, respondent filed a notice of Federal tax lien regarding petitioner's unpaid tax liability for 1996. Petitioner did not request a CDP hearing concerning his 1996 income tax liability.

As a result of the 2010 CDP hearing regarding the section 6700 civil penalties, on May 11, 2011, petitioner entered into an installment agreement for his outstanding section 6700 civil penalties and his 1996 income tax liability (2011 installment agreement).

Taxable Years 1998-2002

On or about October 14, 2010, petitioner filed Forms 1040 for the taxable years 1998, 1999, 2000, 2001, and 2002. On May 14, 2012, respondent assessed income tax, penalties, and interest for these years based upon petitioner's returns. Respondent sent to petitioner, in care of petitioner's representative, a Letter 1058, Final Notice of Intent to Levy and Notice of Your Right to a Hearing, dated August 14, 2012, advising petitioner that respondent intended to levy to collect his unpaid income tax liabilities for the taxable years 1998-2002. On August 16, 2012, petitioner's representative timely submitted a Form 12153, Request for a Collection Due Process or Equivalent Hearing, concerning petitioner's 1998-2002

[*5] income tax liabilities, checking the boxes for "Installment Agreement", "Offer in Compromise", and "I Cannot Pay Balance". A typewritten statement was attached to the CDP hearing request indicating petitioner's desire to amend his 2011 installment agreement (which concerned his income tax liability for 1996 and his section 6700 civil penalties for 1999-2003) to include his income tax liabilities for 1998-2002. The typewritten statement further explained that the proposed levy "would cause * * * [petitioner] extreme economic hardship."

On August 29, 2012, petitioner's CDP hearing request was referred to the IRS Office of Appeals (Appeals), and on September 7, 2012, Appeals sent petitioner a letter acknowledging receipt of his CDP hearing request. On or about September 10, 2012, Settlement Officer Jeffrey Chambers (SO Chambers) was assigned to petitioner's case. SO Chambers had no prior involvement with petitioner or petitioner's tax liabilities.

On October 31, 2012, petitioner's representative submitted to SO Chambers a Form 656, Offer in Compromise, for petitioner's unpaid income tax liabilities for the taxable years 1996, 1997,[2] 1998, 1999, 2000, 2001, and 2002 and for petitioner's section 6700 civil penalties for the years 1999-2003. Petitioner's

---

[2]On brief respondent acknowledges that petitioner does not have an outstanding tax liability for 1997.

[*6] offer-in-compromise (OIC) was for $59,045 and was based on doubt as to collectibility. Petitioner submitted two checks with his OIC: one for a $150 application fee and the other for the required 20% downpayment of $11,809.

On November 5, 2012, petitioner's 2011 installment agreement was reversed because of default.

On November 6, 2012, SO Chambers forwarded petitioner's OIC to respondent's Centralized Offer in Compromise Unit (COIC Unit) for consideration. On April 2, 2013, SO Chambers received petitioner's OIC from respondent's COIC Unit stating that the offer did not meet COIC Unit criteria because petitioner was still paying restitution to the IRS.

On or about April 25, 2013, petitioner's case was assigned to Settlement Officer Stephen McCarrick (SO McCarrick) of respondent's Philadelphia, Pennsylvania, field office. SO McCarrick had no prior involvement with petitioner or petitioner's tax liabilities.

On June 25, 2013, SO McCarrick computed petitioner's reasonable collection potential (RCP) and determined the RCP to be higher than the amount offered in petitioner's OIC. SO McCarrick and petitioner's representative held a telephone conference on June 26, 2013, and discussed petitioner's OIC and SO McCarrick's calculation of petitioner's RCP. Petitioner's representative agreed to

**[*7]** provide SO McCarrick with an updated Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, to show that petitioner's monthly income had decreased. On August 12, 2013, SO McCarrick reviewed the updated financial information that petitioner's representative provided and determined that petitioner's RCP was higher than that calculated by petitioner's representative.

On October 24, 2013, after discussing petitioner's OIC with his Appeals team manager (ATM) and conducting independent research of the Internal Revenue Manual (IRM), SO McCarrick concluded that petitioner's OIC could be considered only if petitioner paid or will pay as part of the OIC the full amount of restitution. In early November 2013 petitioner's representative requested a conference with SO McCarrick's ATM to discuss SO McCarrick's determination concerning the payment of restitution in relation to the OIC. On November 18, 2013, SO McCarrick's ATM spoke with petitioner's representative and explained that he concurred with SO McCarrick's determination regarding petitioner's restitution and OIC; however, the ATM explained that a partial payment installment agreement (PPIA) of $540 per month was a viable payment

[*8] alternative.[3]  On December 4, 2013, petitioner's representative informed SO McCarrick that she disagreed that the payment of restitution was necessary to the OIC and that petitioner was unable to enter into the proposed PPIA for $540 per month.

On December 16, 2013, respondent issued to petitioner a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330, sustaining the proposed levy.

## Discussion

Petitioner invokes our jurisdiction under section 6330(d)(1) to review the notice of determination issued to him with respect to the proposed levy on his property.  Petitioner contends that respondent abused his discretion in sustaining the proposed levy by "refusing to consider * * * [his] offer in compromise unless it provided for full payment of $16,339,199 in joint and several restitution."[4]  Petitioner further contends that respondent abused his discretion by not considering a PPIA amount lower than $540 per month because of petitioner's

_____

[3]Although it is not clear from the record, it appears that the proposed $540 per month PPIA was for petitioner's 1996, 1998, 1999, 2000, 2001, and 2002 income tax liabilities and 1999-2003 sec. 6700 civil penalties.

[4]On brief petitioner suggests that substantial payments have been made towards the joint and several criminal restitution.  However, petitioner does not claim that the full amount of the restitution has been satisfied.

**[\*9]** medical condition and impending retirement. Respondent contends that SO McCarrick did not abuse his discretion in sustaining the proposed levy because he followed guidelines set forth in the IRM and carefully calculated the PPIA using financial information that petitioner provided.

Section 6330(a)(1) provides that the Secretary may not levy on any property or right to property of a person unless the Secretary first notifies the person in writing of the right to a hearing before Appeals. The Appeals officer must verify at the hearing that the requirements of any applicable law or administrative procedure have been met. Sec. 6330(c)(1). At the hearing the person may raise any relevant issue relating to the unpaid tax or the proposed levy, including appropriate spousal defenses, challenges to the appropriateness of the collection action, and collection alternatives. Sec. 6330(c)(2)(A). The person is entitled to raise issues regarding the underlying tax liability "if the person did not receive any statutory notice of deficiency for such tax liability". Sec. 6330(c)(2)(B). Taxpayers are expected to provide all relevant information requested by Appeals, including financial statements, for its consideration of the facts and issues involved in the hearing. Sec. 301.6330-1(e)(1), Proced. & Admin. Regs.

Following the hearing Appeals must determine whether proceeding with the proposed levy action is appropriate. In making that determination, Appeals is

[*10] required to take into consideration: (1) verification presented by the Secretary during the hearing process that the requirements of applicable law and administrative procedure have been met; (2) relevant issues raised by the taxpayer; and (3) whether the proposed levy action balances the need for efficient collection of taxes with the taxpayer's concern regarding the intrusiveness of the proposed collection action. Sec. 6330(c)(3).

In the instant case, the notice of determination sets forth the IRS' verification of compliance with applicable law and administrative procedure, and petitioner does not challenge this verification. Petitioner does not dispute his underlying tax liabilities for the taxable years 1998, 1999, 2000, 2001, and 2002. The issues raised in the petition pertain only to collection alternatives. These issues were considered by SO McCarrick, who determined that the proposed collection action balanced the need for the efficient collection of taxes with the legitimate concern of petitioner that any collection be no more intrusive than necessary.

Where a taxpayer's underlying liability is not in dispute, the Court reviews the Appeals officer's determination for abuse of discretion. See Sego v. Commissioner, 114 T.C. 604, 610 (2000); Goza v. Commissioner, 114 T.C. 176, 181-182 (2000). Under the abuse of discretion standard, we decide whether the

[*11] determination of the Appeals officer was arbitrary, capricious, or without a sound basis in fact or law. Murphy v. Commissioner, 125 T.C. 301, 320 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006). In reviewing for abuse of discretion, we generally consider only the arguments, issues, and other matters that were raised at the CDP hearing or otherwise brought to the attention of Appeals. Giamelli v. Commissioner, 129 T.C. 107, 115 (2007).

Petitioner has raised two issues in this case: (1) whether the Appeals officer abused his discretion in rejecting petitioner's OIC because it did not include full payment of petitioner's criminal restitution and (2) whether the Appeals officer abused his discretion in proposing to petitioner a PPIA of $540 per month. We address each of these contentions in turn.

## 1. Offer in Compromise

At the time of petitioner's CDP hearing, guidelines governing OICs where a taxpayer has outstanding criminal restitution were contained in IRM pt. 5.1.5.24.5 (Aug. 3, 2009). SO McCarrick relied on this IRM section in sustaining the proposed levy action. IRM pt. 5.1.5.24.5 states, in relevant part:

> (3) There may be situations where the IRS has assessed civil tax liabilities, interest and penalties in excess of the amount that was awarded as restitution. In this situation, the IRS may consider an offer in compromise to pay the additional taxes, penalties, and interest for the same tax periods for which restitution was ordered only if the

[*12] defendant has paid or will pay as part of the offer the full amount of the restitution. Example: The court orders payment of restitution to the IRS for the 2000 tax year in the amount of $50,000. The IRS assesses civil tax liabilities, interest, and penalties in the amount of $80,000 for the same tax year. The IRS may compromise the additional amount assessed as civil tax liabilities ($30,000), only if the defendant has paid or will pay the full amount of the restitution ($50,000).

(4) The IRS also will not consider an offer based on Doubt as to Collectibility (DATC) or Effective Tax Administration (ETA) for "nonrestitution" taxes or years because those offers must include a compromise of all unpaid taxes. Example: The court awards restitution payable to the IRS in the amount of $50,000 for the tax years 2000 and 2001. The IRS assesses civil tax liabilities in the amount of $25,000 for tax year 2002. The IRS may not compromise the civil tax liability for the 2002 tax year based on doubt as to collectibility or effective tax administration because the offer would have to include tax years for which restitution was ordered payable to the IRS.

(5) If an offer in compromise is submitted by a taxpayer that includes tax periods for which criminal restitution was ordered payable to the IRS, the offer should be not be [sic] considered unless it provides for full payment of the amount of restitution. Taxpayers submitting such offers should be informed that only the district court that entered the restitution order can modify it.

The fundamental problem with petitioner's OIC is that it did not address his outstanding court-ordered restitution. Petitioner's OIC sought to compromise (1) Federal income tax liabilities for the taxable years 1996, 1998, 1999, 2000, 2001, and 2002 and (2) section 6700 civil penalties for 1999-2003. However,

[*13] petitioner's OIC did not address his outstanding criminal restitution.[5] When a taxpayer owing restitution submits an OIC to the IRS, IRM pt. 5.1.5.24.5 requires that the offer provide for the full payment of the restitution amount. Petitioner's OIC did not address his outstanding criminal restitution as required by the IRM. Generally, an Appeals officer does not abuse his or her discretion in rejecting an OIC when following guidelines set forth in the IRM. Veneziano v. Commissioner, T.C. Memo. 2011-160, 2011 Tax Ct. Memo LEXIS 157, at *11.

Pursuant to the IRM, when a taxpayer seeks to compromise taxes, penalties, and interest for the same tax periods for which restitution was ordered, the offer must provide for full payment of the restitution amount. Petitioner submitted his OIC based on doubt as to collectibility[6] for his 1996, 1998, 1999, 2000, 2001, and 2002 income tax liabilities and his section 6700 civil penalties for 1999-2003. Petitioner's joint and several criminal restitution of $16,339,199 resulted from criminal activities during tax periods 2000, 2001, 2002, and 2003. IRM pt.

---

[5]Petitioner did not alternatively contend that his criminal restitution was satisfied.

[6]In his opening brief petitioner contends that respondent should have alternatively determined that the OIC promoted effective tax administration. However, petitioner did not raise or argue effective tax administration during his CDP hearing, and therefore it cannot be raised on judicial review. See Giamelli v. Commissioner, 129 T.C. 107, 115 (2007).

[*14] 5.1.5.24.5(3) states: "[t]he IRS may consider an offer in compromise to pay the additional taxes, penalties, and interest for the same tax periods for which restitution was ordered only if the defendant has paid or will pay as part of the offer the full amount of the restitution." Petitioner sought to compromise income tax, civil penalties, and interest for some of the same periods covered by his court-ordered restitution (i.e., 2000, 2001, 2002, and 2003). The IRM requires a taxpayer in petitioner's position to pay--or pay as part of the OIC--the full amount of outstanding restitution, which petitioner did not do.[7] SO McCarrick conducted independent research and consulted his ATM before ultimately concluding that petitioner's OIC must include provision for full payment of his joint and several restitution. SO McCarrick's refusal to consider petitioner's OIC unless it met the IRM requirement that criminal restitution be satisfied as part of an OIC does not constitute an abuse of discretion. Indeed, it appears reasonable for the Commissioner to decline an OIC made by a taxpayer who has committed a crime related to Federal tax but who fails to satisfy a restitution order by a District Court in the criminal case. Additionally, SO McCarrick provided petitioner with the opportunity to provide legal authority contrary to this interpretation of the IRM,

---

[7]Internal Revenue Manual pt. 5.1.5.24.5(4) (Aug. 3, 2009), and the example therein state that a doubt as to collectibility OIC for "nonrestitution" years cannot be considered unless it includes years for which restitution is payable to the IRS.

**[*15]** which petitioner did not do. Accordingly, we hold that SO McCarrick's rejection of petitioner's OIC based on the provisions of IRM pt. 5.1.5.24.5 was not arbitrary, capricious, or without sound basis in fact or law.

2. Installment Agreement

Section 6159 authorizes the Commissioner to enter into written agreements allowing taxpayers to pay tax in installment payments if he deems that the "agreement will facilitate full or partial collection of such liability." Thompson v. Commissioner, 140 T.C. 173, 179 (2013). The decision to accept or reject an installment agreement lies within the discretion of the Commissioner. Sec. 301.6159-1(a), (c)(1)(i), Proced. & Admin. Regs. If an Appeals officer follows all statutory and administrative guidelines and provides a reasoned and balanced decision, the Court will not reweigh the equities. Lipson v. Commissioner, T.C. Memo. 2012-252, at *9.

Petitioner argues that SO McCarrick abused his discretion by determining that petitioner had disposable income for a PPIA of $540 per month. Petitioner also argues that SO McCarrick abused his discretion by not considering petitioner's medical condition and how it would affect his ability to earn future income. Respondent argues that SO McCarrick carefully evaluated petitioner's

**[\*16]** monthly income and expenses before proposing a PPIA based upon petitioner's RCP.

As a threshold matter, it is not an abuse of discretion for an Appeals officer to decline to consider a collection alternative where the taxpayer does not place a specific proposal on the table. See Busche v. Commissioner, T.C. Memo. 2011-285, 2011 Tax Ct. Memo LEXIS 277, at \*35; see also Kendricks v. Commissioner, 124 T.C. 69, 79 (2005). Stated otherwise, it is the obligation of the taxpayer, not of the reviewing officer, to start negotiations regarding a collection alternative by making a specific proposal.

Although petitioner indicated his interest in an installment agreement, he never proposed a specific amount or set forth a payment schedule. On November 4, 2013, petitioner's representative requested that SO McCarrick propose a PPIA based on petitioner's income and expenses. Although he was not required to do so, on November 12, 2013, SO McCarrick proposed a PPIA under which petitioner would pay $540 per month. Petitioner, through his representative, rejected this offer. Despite arguing before this Court that SO McCarrick did not consider his medical condition and decreasing future earnings, petitioner did not make a counteroffer to the $540-per-month proposal. Moreover, petitioner did not present any other persuasive evidence or arguments demonstrating that SO

[*17] McCarrick abused his discretion.  Accordingly, we find that SO McCarrick did not abuse his discretion in sustaining the proposed levy after proposing a PPIA of $540 per month.

We hold that the determination to proceed with collection was not an abuse of SO McCarrick's discretion, and the proposed collection action is sustained.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.