T.C. Memo. 2019-21

UNITED STATES TAX COURT

JON ROBERT LUDLAM AND MARIA LOUISA LUDLAM, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 24739-16L.                    Filed March 25, 2019.

Jon Robert Ludlam and Maria Louisa Ludlam, pro se.

Randall B. Childs and A. Gary Begun, for respondent.

MEMORANDUM OPINION

URDA, Judge:  In this collection due process (CDP) case, Jon Robert

Ludlam and his wife Maria Louisa Ludlam seek review, pursuant to section

6320(c) and 6330(d)(1),[1] of the determination by the Internal Revenue Service

_____

[1]All section references are to the Internal Revenue Code in effect at all

(continued...)

[*2] (IRS) Office of Appeals to uphold the filing of a notice of Federal tax lien (NFTL) and a notice of intent to levy relating to petitioners' 2011 Federal income tax liability. Petitioners also challenged an NFTL filing related to their 2010 tax liability, but that claim became moot after a remand to the Office of Appeals resulted in the abatement of the 2010 liability and the withdrawal of the NFTL.

Respondent has moved for summary judgment under Rule 121, contending that no disputed issues of material fact remain and that the determination to sustain the proposed collection actions for 2011 was proper as a matter of law. We agree and accordingly will grant the motion.

## Background

Petitioners are a married couple who lived in Florida when the petition was filed.

A.    Petitioners' 2010 and 2011 Tax Liabilities

Petitioners failed to timely file their 2010 and 2011 Federal income tax returns.[2] After some spurring by the IRS, petitioners filed a belated 2010 return in

---

[1](...continued)
relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure. We round all dollar amounts to the nearest dollar.

[2]Although petitioners' 2010 tax year is no longer at issue, we nonetheless set forth the facts relating to it to provide context for the live disputes.

[*3] January 2013. The IRS accepted this return and assessed the amount shown on it. The IRS later made an adjustment to petitioners' tax liability on the basis of their failure to report and pay the alternative minimum tax that the IRS believed to be due. The IRS, however, did not issue a notice of deficiency relating to this adjustment or otherwise give petitioners an opportunity to dispute it.

Petitioners took a different tack as to their 2011 tax year, choosing not to file a belated return as they had for 2010. On September 25, 2013, the IRS prepared a substitute for return pursuant to its authority under section 6020(b). On the basis of that substitute for return, the IRS sent to petitioners a notice of deficiency dated May 12, 2014, which determined an income tax deficiency for 2011 of $11,369 and additions to tax of $4,091. Petitioners did not petition this Court to redetermine their liability for 2011. The IRS thereafter assessed the amounts set forth in the notice, as well as statutory interest.

B.    Collection Activities and Initial CDP Hearing

The IRS took several actions in 2016 to collect petitioners' outstanding liabilities. Specifically, it issued a notice of NFTL filing for 2010, as well as a notice of NFTL filing and a final notice of intent to levy for 2011. Petitioners timely requested a CDP hearing for both years, asserting, among other things, that the IRS' unilateral adjustment of their 2010 liability had been wrong in procedure

**[*4]** and in substance. On the latter point petitioners claimed that they had a substantial net operating loss for 2010 that could be deducted for later years. Petitioners also indicated that they would not file returns for later years (including 2011) until the 2010 dispute was resolved, because of concerns about the potential risks of filing an inaccurate return.

On August 17, 2016, an IRS settlement officer sent petitioners two letters--one for 2010, another for 2011--scheduling a telephone CDP hearing for September 7, 2016, and requesting certain financial documentation and tax returns from petitioners. Hearing nothing in response, the settlement officer called petitioners as planned. Mr. Ludlam, who answered the call, told the settlement officer that petitioners had not received the scheduling letters. According to petitioners, Mr. Ludlam requested a delay until October 11, 2016, to gather and organize supporting documentation.

The CDP hearing continued after this request, but the parties did not get very far. Mr. Ludlam largely reiterated the positions set forth in petitioners' CDP hearing requests, asserting that the IRS had improperly adjusted the 2010 liability without giving petitioners a chance to respond, and, as a consequence, had ignored a large net operating loss for that year. The settlement officer responded that petitioners were precluded from challenging their 2010 and 2011 liabilities

[*5] because they had had prior opportunities to do so. No other issues were discussed in light of Mr. Ludlam's representation that petitioners would not file tax returns for later years (including 2011), or discuss alternatives to collection, until the 2010 liability was resolved.

Before ending the call, the settlement officer told Mr. Ludlam that she would send petitioners copies of the August letters scheduling the CDP hearing. She also offered petitioners the opportunity for a followup hearing on any day from September 12 through September 16. Finally, she gave petitioners until September 14, 2016, to provide the financial information and tax returns requested in the letters.

Petitioners did not provide any additional information and did not request a followup hearing. Instead, on September 16, 2016, and then again on October 11, 2016, petitioners requested extensions of time. The settlement officer rejected the second request after petitioners declined to provide financial information or tax returns until the dispute over 2010 was resolved.

C.   Notice of Determination

On October 20, 2016, the IRS issued a notice of determination upholding the 2010 collection action. A notice upholding the 2011 collection actions followed the next day. Both notices stated that petitioners only raised liability

[*6] challenges, which were deemed to be precluded on the ground that petitioners had been given prior opportunities to challenge adjustments for each year. The notices also reflected that petitioners refused to propose alternatives to collection or to provide financial information.

D.    Tax Court Proceedings and Supplemental Notice of Determination

Petitioners filed a timely petition in this Court challenging both notices. Respondent thereafter sought a remand to the IRS Office of Appeals relating to 2010, which culminated in the issuance of a supplemental notice of determination by a different settlement officer. The supplemental notice explained that petitioners had not had an opportunity to dispute the IRS' adjustment to their 2010 tax liability and that the original settlement officer had therefore erred in telling them their liability challenge for that year was precluded. The IRS subsequently abated the 2010 liability and withdrew the NFTL for that year. We, in turn, dismissed the petition's claims relating to 2010 as moot. Respondent has now moved for summary judgment as to the remaining claims in the petition, which relate to 2011.

**[*7]**                                    <u>Discussion</u>

A.    <u>Summary Judgment</u>

The purpose of summary judgment is to expedite litigation and avoid costly, time-consuming, and unnecessary trials. <u>Fla. Peach Corp. v. Commissioner</u>, 90 T.C. 678, 681 (1988). Under Rule 121(b) the Court may grant summary judgment when there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law. <u>Sundstrand Corp. v. Commissioner</u>, 98 T.C. 518, 520 (1992), <u>aff'd</u>, 17 F.3d 965 (7th Cir. 1994). In deciding whether to grant summary judgment, we construe factual materials and inferences drawn from them in the light most favorable to the nonmoving party. <u>Id.</u> However, the nonmoving party may not rest upon the mere allegations or denials of its pleadings but instead must set forth specific facts showing that there is a genuine dispute for trial. Rule 121(d); <u>see</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986).

B.    <u>Standard of Review</u>

We have jurisdiction to review the Office of Appeals' determination pursuant to sections 6320(c) and 6330(d)(1). <u>See</u> <u>Murphy v. Commissioner</u>, 125 T.C. 301, 308 (2005), <u>aff'd</u>, 469 F.3d 27 (1st Cir. 2006). Where the validity of the underlying tax liability is properly at issue, we review the determination regarding the underlying tax liability de novo. <u>Sego v. Commissioner</u>, 114 T.C. 604, 610

[*8] (2000); Goza v. Commissioner, 114 T.C. 176, 181-182 (2000). We review all other determinations for abuse of discretion. Sego v. Commissioner, 114 T.C. at 610; Goza v. Commissioner, 114 T.C. at 182. In reviewing for abuse of discretion, we must uphold the Office of Appeals' determination unless it is arbitrary, capricious, or without sound basis in fact or law. See, e.g., Murphy v. Commissioner, 125 T.C. at 320; Taylor v. Commissioner, T.C. Memo. 2009-27, 97 T.C.M. (CCH) 1109, 1116 (2009).

C.      Underlying Liability

A taxpayer may raise a CDP challenge to the existence or amount of his underlying tax liability only if he did not receive a statutory notice of deficiency for the tax year at issue or otherwise have an opportunity to dispute it. See sec. 6330(c)(2)(B). Petitioners do not dispute that they received a notice of deficiency for 2011. Consistent with section 6330(c)(2)(B), they were precluded from contesting their 2011 liability before the Office of Appeals or before us. See Goza v. Commissioner, 114 T.C. at 182-183.

In their opposition to the motion for summary judgment and their supplement to that opposition, petitioners argue that they were unable to file tax returns for 2011 and later years because of their dispute with the IRS over 2010. This argument misses the point. The pertinent question for purposes of section

[*9] 6330(c)(2)(B) is whether petitioners received a statutory notice of deficiency for 2011. Such a notice--often described as a ticket to the Tax Court--gives a taxpayer the opportunity to challenge in this Court the deficiency determined by the IRS. See sec. 6213(a). The notice is not contingent on the filing of a return. Petitioners here received a statutory notice for their 2011 liability but chose not to take advantage of their chance to contest that liability in this Court. That choice comes with consequences dictated by Congress: Petitioners cannot take a belated bite at liability during these CDP proceedings. See sec. 6330(c)(2)(B).[3]

We accordingly will review the IRS' determination for abuse of discretion only. See Goza v. Commissioner, 114 T.C. at 182-183.

D.    Abuse of Discretion

The only remaining question is whether the settlement officer abused her discretion in sustaining the actions to collect petitioners' unpaid 2011 tax liability. Unpacking this general question, we review the record to determine whether the settlement officer: (1) properly verified that the requirements of applicable law or

---

[3]Although petitioners cannot challenge their 2011 liability in this case, we note that our ruling does not preclude petitioners from (i) seeking audit reconsideration with the IRS (although such reconsideration is not subject to judicial review) or (ii) paying the liability and claiming a refund and, if the refund is disallowed, litigating that claim in the Court of Federal Claims or the appropriate Federal District Court.

**[\*10]** administrative procedure have been met; (2) considered any relevant issues petitioners raised; and (3) considered whether "any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of * * * [petitioners] that any collection action be no more intrusive than necessary." See sec. 6330(c)(3). Our review of the record establishes that the settlement officer satisfied all of these requirements.

1.     Verification

This Court has authority to review satisfaction of the verification requirement regardless of whether the taxpayer raised that issue at the CDP hearing. See Hoyle v. Commissioner, 131 T.C. 197, 200-203 (2008), supplemented by 136 T.C. 463 (2011). Petitioners did not allege in their petition that the settlement officer failed to satisfy this requirement and have set forth no specific facts showing that there is a genuine dispute for trial. See Rules 121(d), 331(b)(4). And our review of the record shows that the settlement officer conducted a thorough review of the transcripts of petitioners' account and verified that all requirements were met.[4]

---

[4]The approval requirement of sec. 6751(b)(1) does not apply to the additions to tax at issue because they were additions to tax under secs. 6651 and 6654. See sec. 6751(b)(2)(A).

**[*11]** 2.     <u>Collection Alternatives</u>

The petition does not address the issue of collection alternatives, and we could therefore treat that matter as conceded. <u>See</u> Rule 331(b)(4). Even if petitioners had properly raised the issue, we would find no abuse of discretion by the Office of Appeals.

First and foremost, petitioners never proposed a collection alternative. This ends the matter. It is not an abuse of discretion for a settlement officer to not consider any collection alternatives where a taxpayer has proposed none. <u>See</u> <u>Kendricks v. Commissioner</u>, 124 T.C. 69, 79 (2005).

Even had petitioners proposed a collection alternative, their failure to submit the requested tax returns and financial documentation--expressly referenced in the notice of determination--would justify the settlement officer in declining to consider a collection alternative. A taxpayer in a CDP proceeding has the right to request a collection alternative. <u>See</u> sec. 6330(c)(2)(A)(iii). This right, however, comes with strings attached. The regulations specify that "[t]axpayers will be expected to provide all relevant information requested by * * * [the settlement officer], including financial statements". Sec. 301.6330-1(e)(1), Proced. & Admin. Regs.; <u>see also</u> sec. 301.6320-1(e)(1), Proced. & Admin. Regs. Such information is necessary for a settlement officer to evaluate a taxpayer's

**[*12]** ability to pay and to weigh the appropriateness of any collection alternative. We have often observed that a settlement officer does not abuse her discretion in declining to consider a collection alternative in the absence of such information. See, e.g., Scholz v. Commissioner, T.C. Memo. 2015-2, at *7. A taxpayer also must be in full compliance with his Federal tax filing obligations to be eligible for a collection alternative. See, e.g., Giamelli v. Commissioner, 129 T.C. 107, 111-112 (2007).

The notice of determination makes plain (in the "Issues You Raised" section) that petitioners offered "no response" to the settlement officer's repeated requests for unfiled tax returns and financial information. Petitioners' failure on this score thus would render them ineligible for any collection alternative, even had they proposed one.[5]

---

[5]Petitioners assert that they could not file their tax returns for 2011 and later years because they were in a dispute with the IRS over their 2010 liability and feared perjury charges. Our precedent makes clear that "a dispute concerning a taxpayer's liability for a prior taxable year does not constitute reasonable cause for failing to timely file a return for the current taxable year." Hairston v. Commissioner, T.C. Memo. 1995-566, 70 T.C.M. (CCH) 1438, 1445 (1995); see also Robertson v. Commissioner, T.C. Memo. 2000-100, 79 T.C.M. (CCH) 1725, 1729 (2000), aff'd, 15 F. App'x 467 (9th Cir. 2001). And a taxpayer "cannot assert a Fifth Amendment privilege against compulsory self-incrimination to justify the failure to file any tax return at all." Stubbs v. Commissioner, 797 F.2d 936, 938 (11th Cir. 1986); see also United States v. Sullivan, 274 U.S. 259, 264 (1927); Thompson v. Commissioner, 78 T.C. 558, 563 (1982).

**[\*13]** 3.     Remaining Issues

Petitioners raise two other issues.  First, petitioners contend that the settlement officer abused her discretion by not giving them a face-to-face CDP hearing.  "We have repeatedly held that the IRS is not required to afford a taxpayer a face-to-face hearing and that a hearing conducted by telephone, correspondence, or document review will suffice."  Mack v. Commissioner, T.C. Memo. 2018-54, at \*12; see sec. 301.6320-1(d)(2), Q&A-D6, Proced. & Admin. Regs.; sec. 301.6330-1(d)(2), Q&A-D6, Proced. & Admin. Regs.; see also Williams v. Commissioner, 718 F.3d 89, 92-93 (2d Cir. 2013).  In fact, the applicable regulations provide that a face-to-face hearing regarding underlying liability will not be granted where, as here, a taxpayer seeks to raise "irrelevant or frivolous issues".  Sec. 301.6320-1(d)(2), Q&A-D8, Proced. & Admin. Regs.; sec. 301.6330-1(d)(2), Q&A-D8, Proced. & Admin. Regs.[6]  The same regulations further state that a face-to-face hearing regarding a collection alternative will not be granted where, as here, a taxpayer has not "filed required returns".

---

[6]Petitioners similarly criticize the supplemental CDP hearing because it did not include a face-to-face hearing.  As explained above, a face-to-face hearing is not required.  Moreover, the supplemental hearing revisited the determination sustaining the NFTL filing for 2010, and petitioners' claims relating to that collection action are moot.

[*14] Petitioners also argue that the settlement officer abused her discretion by refusing to grant additional time to prepare for the CDP hearing.  The reasonableness of an extension request, and the reasonableness of a denial of such a request, depend on the particular facts of the case.  See Dinino v. Commissioner, T.C. Memo. 2009-284, 98 T.C.M. (CCH) 559, 565 (2009); see also Coleman v. Commissioner, T.C. Memo. 2010-51, 99 T.C.M. (CCH) 1213, 1215-1216 (2010), aff'd, 420 F. App'x 663 (8th Cir. 2011); Shanley v. Commissioner, T.C. Memo. 2009-17, 97 T.C.M. (CCH) 1062, 1065-1066 (2009).  Looking at the facts of this case, we cannot say that the settlement officer abused her discretion.

As an initial matter, the settlement officer acted consistently with IRS guidelines as to the scheduling of the hearing and the submission of information.  See Dinino v. Commissioner, 98 T.C.M. (CCH) at 565-566.  "There is no requirement that the Commissioner wait a certain amount of time before making a determination as to a proposed * * * [collection procedure]."  Gazi v. Commissioner, T.C. Memo. 2007-342, 94 T.C.M. (CCH) 474, 479 (2007).  "Appeals will, however, attempt to conduct a CDP hearing and issue a Notice of Determination as expeditiously as possible under the circumstances."  Sec. 301.6330-1(e)(3), Q&A-E9, Proced. & Admin. Regs.; see also sec. 301.6320-1(e)(3), Q&A-E9, Proced. & Admin. Regs.

[*15] The settlement officer stayed within the broad discretion granted to her. Her August 17, 2016, letter scheduled a CDP hearing approximately three weeks later, on September 7, 2016. Receiving no response from petitioners, she proceeded with the CDP hearing, in which Mr. Ludlam fully participated. This did not mean that she was insensitive to petitioners' representation that they had not received the August letter. To the contrary, she gave them an additional week (until September 14) to submit supporting documentation and held open the entirety of the next week (until September 16) for a followup CDP hearing at petitioners' convenience.

In addition to this explicit extension of time, petitioners received a further de facto extension until October 11, 2016, which was the full amount of time they had initially requested. Petitioners requested more time on October 11, a request which the settlement officer rejected given petitioners' "adamant" refusal to supply the requested tax returns and financial information. Even so, the notice of determination did not issue until October 21, 2016, which gave petitioners another 10 days to submit financial information and tax returns to the Office of Appeals, pursuant to that office's established policies. See Dinino v. Commissioner, 98 T.C.M. (CCH) at 565-566; see also Internal Revenue Manual pt. 8.22.9.10 (Nov. 13, 2013).

[*16] Although petitioners were given approximately six weeks after their CDP hearing, they presented no additional information to the settlement officer. Nor have petitioners identified to this Court (or to the Office of Appeals during the remand) any material that they were unable to introduce during the first go-round because of the lack of a (further) extension. Given that petitioners were foreclosed from challenging their 2011 underlying liability and refused to submit their financial information or tax returns for 2011 and subsequent years while their 2010 liability remained in dispute, nothing in the record suggests that granting petitioners additional time would have served any purpose.

On these facts, the settlement officer did not abuse her discretion by declining to give petitioners additional time.

Finding no abuse of discretion in any respect, we will grant summary judgment for respondent and affirm the IRS' determination to sustain the NFTL filing and the final notice of intent to levy relating to petitioners' 2011 tax year.

To reflect the foregoing,

<u>An appropriate order and decision will be entered</u>.